**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1457-18T4

HI-WAY BLOCK & PATIO INC.,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

JOHN JOHNSTON, individually
and trading as CJL LANDSCAPING,
LLC,

    Defendant-Respondent/
    Cross-Appellant/Third-
    Party Plaintiff,

v.

CJL DESIGN & CONSTRUCTION,
LLC,

    Third-Party Defendant.

_____

Argued October 15, 2019 – Decided October 29, 2019

Before Judges Geiger and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3772-17.

Andrew R. Turner argued the cause for appellant/cross respondent (Turner Law Firm, LLC, attorneys; Andrew R. Turner, of counsel and on the brief).

Gary S. Newman argued the cause for respondent/cross appellant (Newman & Denburg, LLC, attorneys; Gary S. Newman on the brief).

PER CURIAM

Plaintiff Hi-Way Block & Patio Inc. appeals from Law Division orders entered following a bench trial dismissing plaintiff's complaint and denying reconsideration. Defendant John Johnston, individually and trading as CJL Landscaping, LLC, cross-appeals from an order denying an award of frivolous litigation sanctions under Rule 1:4-8 and N.J.S.A. 2A:15-59.1. We affirm in part and vacate and remand in part.

## I.

Plaintiff sells paving stones and other products to contractors. Commencing in or about 2011, defendant purchased materials from plaintiff. Plaintiff claimed defendant owed it an unpaid balance on a book account for materials supplied. At issue in this case is the enforceability of a purported settlement agreement (the Agreement) dated March 25, 2015, acknowledging CJL Landscaping owed plaintiff an outstanding balance of $35,658. The signature line was allegedly signed by John Johnston as "Guarantor" on a

signature line for "John Johnson." Paragraphs two and three of the Agreement relating to payment terms were left blank. The Agreement states the guarantor "is liable for all cost[s] not excluding (interest and fees) associated with collection of this debt." It does not state the applicable interest rate. The Agreement contains no witness signatures and is not notarized. Defendant denied that he signed or agreed to the terms of the Agreement. This litigation followed.

On May 31, 2017, plaintiff filed a complaint to enforce the Agreement. Count one alleged breach of the Agreement, acceptance of goods without payment, unjust enrichment, and demanded judgment for "$38,219.06, plus interest, costs, and such other relief as the court deems fair, just, and equitable." Count two alleged defendant was "liable for all costs associated with collection" and that "[p]laintiff's costs of collection will be at least twenty (20%) percent of the amount due," and demanded judgment for "$7,643.81, plus interest, costs, and such other relief as the court deems fair, just, and equitable."

After defendant did not file a timely responsive pleading, default and default judgment were entered against defendant. Defendant successfully moved to vacate default and the default judgment, and was granted leave to file a responsive pleading. Defendant filled an answer, affirmative defense,

counterclaim, and third-party complaint. Defendant alleged he did not personally purchase goods from, or owe any monies to, plaintiff. He contended the goods were sold to third-party defendant CJL Design & Construction, LLC, not defendant. Defendant alleged his signature on the Agreement was forged. He demanded judgment for compensatory, consequential, and punitive damages, attorney's fees, and costs of suit.

Following the completion of expedited discovery, plaintiff moved to preclude defendant from using two checks not produced in discovery. Defendant moved to: (1) bar plaintiff from introducing any documents at trial that were not produced in discovery; (2) bar admission of the Agreement; and (3) dismiss plaintiff's complaint with prejudice for lack of proofs. Defendant asserted plaintiff did not provide requested discovery, including any invoices, bills of lading, or executed contracts. The trial court denied plaintiff's motion and granted defendant's motion in part. The court barred plaintiff from producing any documents at trial that were not provided in discovery as of June 25, 2018.

The case proceeded to a one-day bench trial. Plaintiff did not proceed on the book account. Instead, it asserted the Agreement as the sole basis for

liability.[1] Mark Woitscheck, Stephen Sapio, and Steven Woitscheck testified for plaintiff. Plaintiff did not utilize a handwriting expert. Defendant testified on his own behalf.

The parties submitted post-trial proposed findings of fact and conclusions of law. The trial court issued a September 17, 2018 written trial decision and order ruling in defendant's favor and dismissing plaintiff's complaint with prejudice.

In its written decision, the trial court noted plaintiff "postured this litigation as one simply to determine whether or not the Agreement was entered into by the parties." Each of plaintiff's witnesses "testified as to their knowledge concerning the surrounding circumstances and business relationship with the defendant as well as the circumstances surrounding the execution of the alleged Agreement." Sapio and Woitscheck testified "they were physically present when the Agreement was executed between the parties." They testified that Woitscheck had a brief conversation with Johnston, he signed the Agreement, and "hurriedly left the facility."

---

[1] During oral argument, plaintiff acknowledged its claims on the book account were barred by the applicable statute of limitations. Hence, at trial, its claim was limited to enforcing the Agreement.

A-1457-18T4

Woitscheck, the owner of the company and in charge of accounts receivable and payable, "testified that the purpose of the Agreement was to put the 'debt on the record.'" He indicated that over time, defendant "had accumulated a sizable debt for goods received but not paid for." It was plaintiff's practice to send monthly billing statements to customers listing the invoices and amounts due and owing. Woitscheck testified the monthly statements eliminated the need for maintaining individualized invoices and point-of-service tickets.

Woitscheck was confronted on cross-examination with checks issued by defendant totaling more than $58,000 for payment of goods supplied by plaintiff. Woitscheck did not dispute those payments were made but claimed defendant had ordered goods well in excess of that amount as reflected by a monthly statement admitted as an exhibit. According to Woitscheck, the monthly statement only reflected goods not paid for.

Johnston testified that he did not execute the Agreement. He further testified he never received monthly statements from plaintiff indicating any outstanding invoices. He asserted that he first learned plaintiff claimed a large balance was owed when Woitscheck confronted him in late 2014 or early 2015.

The trial court stated:

The testimony revealed that the practice was for Mr. Johnston to leave checks with the plaintiff. The checks were from the business account of CJL Design & Construction, LLC. It was understood that [plaintiff] would fill out the checks in the amount due and owing from CJL as necessary. Marked as Exhibit 4 were a large grouping of checks running from check number 5177 and inclusive of check number 6317 showing payments made to the plaintiff by the defendant.

Describing the dispute as a classic "he said/she said" scenario, the trial court found all of the witnesses "appeared credible." The trial court engaged in the following analysis:

A number of factors lead this [c]ourt to conclude that plaintiff has failed to meet this standard. Other than the Agreement and the Monthly History marked as Exhibit P2 there are no further documents to demonstrate the existence of the debt. It is recognized that plaintiff's counsel advocates that the only issue is whether the Agreement was executed. Given the sharply divergent testimony by equally credible witnesses extrinsic evidence is of assistance in the analysis.

Testimony revealed that the practice was for Mr. Johnston to leave checks with his representatives who were free, based upon custom and practice, to fill in the amounts on the checks for purchases made by Mr. Johnston. Defendant presented checks in excess of $58,000 for payments made from August 9, 2011 through November 11, 2014. The Agreement was allegedly executed as of March 25, 2015 for what were characterized as long outstanding debt. An analysis of the Monthly Statements submitted indicates a balance of $29,287.67 as July 27, 2013 yet Exhibit D-1 shows many payments well after that. Plaintiff failed to

7

present invoices or any other documentary evidence to substantiate the amount of the debt. The Monthly History is inadequate to permit the [c]ourt as factfinder to accurately determine the debt. (This appears to explain why counsel for plaintiff proceeded to try this case on the Agreement rather than on the debt itself.)

Counsel for plaintiff submits that the signature on the Agreement is similar to signatures on checks admitted by Mr. Johnston to have been signed by him. However, Mr. Johnston denied signing certain other checks and without a handwriting expert this court is unable to determine with any degree of certainty that it is Mr. Johnston's signature. Also of note is that the signature line on the Agreement has defendant's name misspelled. Defendant testified he would not have signed a document where his name was misspelled.

Based on all the factors noted herein, this [c]ourt as factfinder determines that the plaintiff has failed to prove by a preponderance of the evidence that Mr. Johnston executed the Agreement. Plaintiff has also failed to prove by a preponderance of evidence the amount of the debt. Plaintiff's complaint is hereby dismissed with prejudice.

Plaintiff moved for reconsideration. Defendant's counsel wrote to plaintiff's counsel demanding that plaintiff withdraw its motion for reconsideration or defendant would seek frivolous litigation sanctions pursuant to N.J.S.A. 2A:15-59.1 and Rule 1:4-8. Plaintiff did not withdraw its motion. Plaintiff contended the trial court overlooked the fact that the checks presented by defendant were issued before the date of the Agreement and the purpose of

8

the Agreement was to demonstrate that as of March 25, 2015, the amount set forth in the Agreement was the amount owed by defendant to plaintiff. Plaintiff argued the Agreement was an enforceable contract and "the [c]ourt should not look beyond [its] four corners for enforcement or what was behind the agreement." Plaintiff asserted the focus should have been whether there was an enforceable contract, not whether the underlying debt existed. Plaintiff further asserted that every check presented by defendant had been accounted for. Therefore, if the Agreement is valid, the amount of the Agreement speaks for itself and plaintiff does not have the burden of establishing how the amount was derived. Further, extrinsic evidence should not have been permitted.

Defendant opposed reconsideration and filed a cross-motion for frivolous litigation sanctions. Defendant argued plaintiff cannot present evidence in support of reconsideration that was not produced at trial. At trial, defendant testified he never signed the Agreement, and even if he had, plaintiff could not prove the underlying debt. Plaintiff elected to limit its evidence to the Agreement and did not introduce evidence regarding the underlying book account or pursue a quantum meruit claim. Defendant contended the trial decision was supported by credible evidence in the record, plaintiff failed to cite

9

any law, or show any facts that were raised at trial that the court overlooked. Defendant contended plaintiff's motion was frivolous.

The trial court denied reconsideration. The court noted plaintiff was "attempting to narrow the focus inappropriately in the sense of not permitting the defense to present relevant evidence to cast doubt on the validity of [the Agreement]." As the factfinder, the court determined plaintiff had failed to prove by a preponderance of the evidence that defendant executed the Agreement. "Therefore there was no agreement." The court stated it permitted the extrinsic evidence "because when there was an issue as to whether there was an agreement . . . the background circumstances that allegedly led to execution of the [A]greement were directly relevant to determining whether there was an agreement."

With the two sides taking completely divergent positions, "the background circumstances and attendant facts were important to the [c]ourt to determine whether in fact the agreement was executed." The court reiterated its original analysis that it found for defendant "based upon the inability of the plaintiff to demonstrate through invoices or other proofs that the numbers made sense coupled with [defendant's] testimony that he never would have signed a document with his name misspelled and other things."

The court also denied defendant's application for frivolous litigation sanctions, cryptically stating: "Each party bears the burden of defending their case through trial and even on a motion for reconsideration so I'm not going to award fees on that."

This appeal followed. Plaintiff argues the trial court erred by failing to make express conclusions of law and abused its discretion when assessing credibility without regard to evidence. On the cross-appeal, defendant argues he should have been awarded attorney's fees and costs for opposing the reconsideration motion.

II.

"Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review . . . ." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (citations omitted). "[F]indings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly

unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Ibid. (alteration in original) (quoting In re Tr. Created By Agreement Dated Dec. 20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008)). We review the trial court's interpretation of law de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We see no basis to disturb the result here. The record adequately supports the trial court's finding and conclusions. We discern no error or abuse of discretion by the trial court. Plaintiff's argument lacks sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

III.

We next address the denial of plaintiff's motion for reconsideration. Under Rule 4:49-2, a party may move for "rehearing or reconsideration" of an order or judgment within twenty days of its entry. The motion must include "a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." Ibid.

"Reconsideration is a matter within the sound discretion of the court, to be exercised in the interest of justice." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). "A litigant should not seek reconsideration merely because

12

of dissatisfaction with a decision of the [c]ourt." Ibid. Rather, the preferred course would be to look to the Appellate Division for relief. Palumbo v. Twp. of Old Bridge, 243 N.J. Super. 142, 147, n.3 (App. Div. 1990). "Reconsideration should be used only for those cases which fall into that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria, 242 N.J. Super. at 401). The proper object of a motion for reconsideration is to correct a court's error or oversight, and not to "re-argue [a] motion that has already been heard for the purpose of taking the proverbial second bite of the apple." State v. Fitzsimmons, 286 N.J. Super. 141, 147 (App. Div. 1995), certif. granted, remanded on other grounds, 143 N.J. 482 (1996). The basis for the motion for reconsideration focuses on "what was before the court in the first instance." Lahue v. Pio Costa, 263 N.J. Super. 575, 598 (App. Div. 1993). We review the denial of a motion for reconsideration for abuse of discretion.

Plaintiff relied, in part, on documents or other evidence that was available to plaintiff but not introduced at trial. The trial court properly restricted its

analysis to the trial record. See Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (limiting consideration of new or additional information to that "which it could not have provided" previously) (quoting D'Atria, 242 N.J. Super. at 401).

We discern no abuse of discretion by the trial court. Plaintiff did not demonstrate that the trial court "expressed its decision based upon a palpably incorrect or irrational basis, or . . . either did not consider, or failed to appreciate the significance of probative, competent evidence" introduced at trial. Ibid. (quoting D'Atria, 242 N.J. Super. at 401).

IV.

Finally, we address the denial of defendant's motion for frivolous litigation sanctions. We review the judge's decision on a motion for frivolous lawsuit sanctions under an abuse of discretion standard. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011). Reversal is warranted "only if [the decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)). We discern no abuse of discretion here.

14

Sanctions against an attorney under Rule 1:4-8 "are specifically designed to deter the filing or pursuit of frivolous litigation." LoBiondo v. Schwartz, 199 N.J. 62, 98 (2009). A second purpose of the rule is to compensate the opposing party in defending against frivolous litigation. Toll Bros., Inc. v. Twp. of W. Windsor, 190 N.J. 61, 71 (2007). The rule provides for the imposition of sanctions where the attorney or pro se party filed a pleading or a motion with an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," Rule 1:4-8(a)(1), or by asserting a claim or defense that lacks the legal or evidential support required by Rule 1:4-8(a)(2), (3) and (4). See State v. Franklin Sav. Account No. 2067, 389 N.J. Super. 272, 281 (App. Div. 2006) (noting these factors under the rule). "For purposes of imposing sanctions under Rule 1:4-8, an assertion is deemed 'frivolous' when 'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" United Hearts, LLC v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009) (quoting First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007)).

"The nature of litigation conduct warranting sanction under [Rule 1:4-8] has been strictly construed." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:4-8 (2020). Accordingly, Rule 1:4-8 sanctions will not be

imposed against an attorney who mistakenly files a claim in good faith. Horowitz v. Weishoff, 346 N.J. Super. 165, 166-67 (App. Div. 2001); see also First Atl. Fed. Credit Union, 391 N.J. Super. at 432 (holding that an objectively reasonable belief in the merits of a claim precludes an attorney fee award); K.D. v. Bozarth, 313 N.J. Super. 561, 574-75 (App. Div. 1998) (declining to award attorney's fees where there is no showing the attorney acted in bad faith).

N.J.S.A. 2A:15-59.1(a)(1), which governs frivolous litigation sanctions against parties, provides:

> [a] party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.

A finding that the pleading is "frivolous" must be based upon a finding that:

> (1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
>
> (2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith

16

argument for an extension, modification or reversal of existing law.

[N.J.S.A. 2A:15-59.1(b).]

The frivolous litigation statute is interpreted restrictively. DeBrango v. Summit Bancorp, 328 N.J. Super. 219, 226 (App. Div. 2000). Sanctions should be awarded only in exceptional cases. Fagas v. Scott, 251 N.J. Super. 169, 181 (Law Div. 1991).

"'[T]he burden of proving that the non-prevailing party acted in bad faith' is on the party who seeks fees and costs pursuant to N.J.S.A. 2A:15-59.1." Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 408 (App. Div. 2009) (alteration in original) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)). When a prevailing party's allegation is based on an assertion that the non-prevailing party's claim lacked "a reasonable basis in law or equity," and the non-prevailing party is represented by an attorney, "an award cannot be sustained if the '[nonprevailing party] did not act in bad faith in asserting' or pursuing the claim." Ibid. (quoting McKeown-Brand, 132 N.J. at 549).

"When the [non-prevailing party's] conduct bespeaks an honest attempt to press a perceived, though ill-founded and perhaps misguided, claim, he or she should not be found to have acted in bad faith." Belfer v. Merling, 322 N.J.

Super. 124, 144-45 (App. Div. 1999) (citing McKeown-Brand, 132 N.J. at 563). Even the granting summary judgment in favor of a prevailing party, "without more, does not support a finding that the [non-prevailing party] filed or pursued the claim in bad faith." Ferolito, 408 N.J. Super. at 408 (citing McKeown-Brand, 132 N.J. at 563).

Rule 1:7-4(a) requires trial judges to make specific findings of fact and conclusions of law, either in writing or orally, on all motions decided by written orders appealable as of right. Curtis v. Finneran, 83 N.J. 563, 569–70 (1980); Foley, Inc. v. Fevco, Inc., 379 N.J. Super. 574, 589 (App. Div. 2005). The trial judge made no findings and stated no conclusions for denying frivolous litigation sanctions.

Because we cannot evaluate whether the judge's exercised discretion was "premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amount[ed] to a clear error in judgment," Masone, 382 N.J. Super. at 193, we are constrained to vacate the order denying frivolous litigation sanctions. We remand for the trial court to render explicit findings and conclusions. See R.M. v. Supreme Court of N.J., 190 N.J. 1, 12-13 (2007) (vacating and remanding counsel fee award where judge failed to explain how or why he arrived at award); City of Englewood v.

18

Exxon Mobile Corp., 406 N.J. Super. 110, 125–26 (App. Div. 2009) (vacating and remanding attorney fee award where record was devoid of analysis of relevant considerations outlined in RPC 1.5(a) or explanation for the fee award).

On remand, the judge must consider the submissions and identify whether defendant had demonstrated the presence of actionable conduct and then evaluate plaintiff and counsel's claimed defense to such charge. See First Atl. Federal Credit Union, 391 N.J. Super. at 432 ("Where a party has reasonable and good faith belief in the merit of the cause, attorney's fees will not be awarded.") (citations omitted)). If sanctions are shown to be appropriate, the judge's decision must fully explain the basis for imposing sanctions along with who is responsible and why. N.J.S.A. 2A:15-59.1(b); R. 1:4-8(d). Finally, an analysis of the reasonableness of the fees awarded as a sanction must be stated. City of Englewood, 406 N.J. Super. at 125.

Affirmed in part, vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1457-18T4