**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5874-17T2

HEATHER ALPER and
LUCAS ALPER, a minor,

     Plaintiffs-Respondents,

v.

JOSEPH WOLFSON, BETTY
SIMON, and BETTY SIMON
TRUSTEE, LLC,

     Defendants-Appellants.

_____

Submitted October 28, 2019 – Decided December 18, 2019

Before Judges Fasciale, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. C-000008-18.

Jacobs & Barbone, PA, attorneys for appellants (Edwin J. Jacobs, Jr., and Joel Solomon Juffe, on the briefs).

Jeffrey B. Saper, attorney for respondents.

PER CURIAM

Defendants Joseph Wolfson, Betty Simon, and Betty Simon Trustee, LLC (BST) appeal the trial judge's July 23, 2018 order denying their motion for attorney's fees and sanctions under N.J.S.A. 2A:15-59.1 and Rule 1:4-8. In the underlying action, plaintiffs Heather Alper and Lucas Alper filed a complaint against defendants, alleging that Wolfson wrongfully removed funds from various 529 accounts established by Simon for plaintiffs' benefit. Believing the complaint was frivolous, defendants requested several times that plaintiffs withdraw their complaint. Judge Michael Blee ultimately dismissed plaintiffs' complaint due to a lack of standing. However, the judge denied defendants' motion for attorney's fees and sanctions. Having reviewed the record, and in light of the applicable law, we affirm the denial of defendants' motion for attorney's fees and costs.

We recite the relevant facts from the record. During 2005, Simon and her husband (now deceased) established a Utah Educational Savings Plan (UESP) account[1] for the benefit of their granddaughter, Heather Alper. They also established a non-UESP account for their grandson, Lucas Alper, which operated in the same manner as the UESP account. Simon was the owner of

---

[1] A "UESP is a 529 plan . . . designed . . . to encourage saving for the future qualified higher education expenses of a beneficiary."

both accounts, so any decisions concerning the accounts, including making withdrawals, required her authorization.

In 2015, before the current action, two of Simon's other granddaughters, Farah Zell Burns and Sandra Zell Neustadter, filed a complaint on behalf of their children against Wolfson and BST, two of the defendants in the current matter. Complaint, Burns v. Wolfson, No. ATL-C-17-15 (Ch. Div. Mar. 11, 2015). The Burns plaintiffs alleged that Wolfson fraudulently induced Simon to sign forms authorizing the withdrawal of funds from their children's UESP accounts and, without authorization, deposited the funds first into Simon's personal account and then into BST's account. Simon owned the UESP accounts when the alleged fraud occurred. The judge dismissed the Burns complaint with prejudice for lack of standing after finding that Simon had absolute discretion over the UESP accounts. The judge was unable "to find sufficient facts or even cognizable law that [would] allow[] the [c]ourt to adopt a theory of vicarious standing," and he added that Simon was the proper plaintiff for claims of conversion, fraud, and unjust enrichment.

Turning to the current action, on January 18, 2018, plaintiffs filed a similar complaint against defendants. Plaintiffs alleged that Wolfson fraudulently induced Simon to remove funds from Heather Alper's UESP

account so he could deposit the funds into BST's account. According to plaintiffs' complaint, BST was an entity that the Simon family business "used as a private 'family bank,' receiving revenues and disbursing monies as directed by . . . Wolfson." Wolfson was BST's chief operating officer and "personally control[led], and ha[d] controlled, for several years, the finances of [BST], including, but not limited to, disbursements made by [BST], as well as any and all litigation pertaining thereto."

Plaintiffs further alleged that Wolfson had "for several years, personally controlled, and continue[d] to personally control, all of . . . Simon's personal, financial and business interests" and that he was aware of Simon's "limited ability to read or understand documents" pertaining to her personal and business interests. Wolfson would "place documents in front of . . . Simon and show her where to sign them, without explaining the nature or purpose of those documents, and . . . Simon would sign said documents without question or hesitation." Then, he would use the signed withdrawal forms to remove small amounts not requiring a signature guarantee from Simon and would deposit the funds into BST's account and classify the transactions as a "loan" to BST.[2] With

---

[2] Neither party has provided a certification from Simon to support or refute any of these assertions. Accordingly, the record is silent as to Simon's position.

A-5874-17T2

regard to Lucas Alper's non-UESP account, plaintiffs do not allege the same scheme, but they claim that the funds in his account were also used as a "loan" to BST. Plaintiffs claim that on multiple occasions, Simon "denied knowledge or understanding of many of the transactions executed on her behalf and on behalf of . . . [BST], by . . . Wolfson."

Plaintiffs further allege that the Simon family business was involved in a real estate sale, producing almost twelve million dollars, which was intended to pay off family members' loans to BST. However, plaintiffs assert that their "loans" were never repaid. Consequently, they filed suit against defendants, seeking restitution and asserting counts of constructive trust, fraud, conversion, and unjust enrichment.

Defendants sent a letter to plaintiffs, claiming that because plaintiffs lacked standing, their complaint was frivolous, in violation of Rule 1:4-8(a). Defendants also asserted that plaintiffs' complaint was improper in light of dismissal of the Burns complaint. Defendants informed plaintiffs that if they did not withdraw their complaint within twenty-eight days, defendants would apply for sanctions. When plaintiffs refused to withdraw the complaint, defendants filed a motion to dismiss.

The judge granted defendants' motion, dismissing plaintiffs' complaint with prejudice due to a lack of standing. He found that Simon was the owner of the accounts, not an account holder as plaintiffs had claimed. As the account owner, Simon had complete discretion to withdraw and use the funds for any purpose. The judge also found that the accounts were not inter vivos gifts because Simon never delivered the funds to plaintiffs and "never surrendered ownership and dominion over the funds." Because plaintiffs had no possessory interest in the accounts, they lacked standing to sue for wrongful removal of the funds. In addition, the judge found that Simon was the proper party to pursue the claims.

Plaintiffs then filed a motion for reconsideration, asking the judge to determine whether Simon was competent when she withdrew the funds from Heather Alper's account and whether Wolfson unduly influenced her. Defendants sent another letter to plaintiffs, requesting that they withdraw their frivolous motion. Plaintiffs declined to withdraw the motion, so defendants opposed it and cross-moved for attorney's fees and sanctions under the frivolous litigation statute.

On June 8, 2018, the judge denied plaintiffs' motion for reconsideration with prejudice, reasoning that he had previously found that plaintiffs lacked

standing, so there was no reason to consider the substance of any further allegations in the complaint. The judge was "perplexed that the plaintiffs asked the [c]ourt to consider a claim of mental incapacity" because plaintiffs' only relevant pleadings amounted to an allegation of undue influence. He also found it "perplexing . . . that [plaintiffs' attorney] . . . would make a contention that the [c]ourt overlooked the issue of undue influence when it did not because it addressed it" by stating that there was no need to further consider plaintiffs' allegations since plaintiffs lacked standing.

On July 23, 2018, the judge denied defendants' cross-motion for attorney's fees and sanctions. Although he "was perplexed by the inadequacies of [p]laintiff's motion," he did not find that plaintiffs acted in bad faith and "intended to engage in harassing and vexatious litigation." This appeal ensued.

On appeal, defendants argue that the judge erred in denying their motion for attorney's fees and sanctions under the frivolous litigation statute because he failed to consider N.J.S.A. 2A:15-59.1(b)(2). Defendants contend that the judge should have found that plaintiffs knew or should have known that they lacked standing to pursue their claims because Simon owned the accounts at the time of the alleged wrongful withdrawals, and defendants informed plaintiffs of this

issue several times.[3]  Defendants further contend that plaintiffs are liable because they misrepresented facts by referring to Simon as an account holder and referring to the accounts as gifts.  Defendants assert that plaintiffs either intentionally misstated these facts or failed to conduct a due diligence investigation, but regardless of the cause, plaintiffs knew or should have known that they lacked standing to pursue their claims.

We review a denial of an award of attorney's fees and sanctions for frivolous litigation for an abuse of discretion.  Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing DeBrango v. Summit Bancorp, 328 N.J. Super. 219, 229 (App. Div. 2000)).  Reversal is warranted if the decision "was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error

---

[3] While plaintiffs' allegations would be more convincing if Simon had certified that they were true, that defendants did not provide any certification from Simon is equally if not more suspect.  The record contains no firsthand account from Simon as to her position in this litigation.  Additionally, we find it concerning that the same attorney represents both Wolfson and Simon in this action, which appears to be a conflict of interest.  See RPC 1.7(a) ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client[.]").

in judgment." Ibid. (citing Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Under the frivolous litigation statute, a judge may award reasonable attorney's fees and costs to a prevailing party in a civil action "if the judge finds at any time during the proceedings or upon judgment that a complaint . . . of the non-prevailing person was frivolous." N.J.S.A. 2A:15-59.1(a)(1). This statute applies only to the conduct of parties, not their attorneys. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 549 (1993). A complaint is frivolous if

> (1) [it] . . . was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury[,] or
>
> (2) [t]he nonprevailing party knew, or should have known, that the complaint . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
>
> [N.J.S.A. 2A:15-59.1(b).]

"[F]alse allegations of fact [do] not justify the award of counsel fees, unless they are made in bad faith, 'for the purpose of harassment, delay or malicious injury.'" McKeown-Brand, 132 N.J. at 561 (quoting N.J.S.A. 2A:15-59.1(b)(1)). If the non-prevailing party made "an honest attempt to press a perceived, [though] ill-

founded claim," the judge should not find that they acted in bad faith. Id. at 563. The prevailing party bears the burden to show that the non-prevailing party acted in bad faith. Id. at 559.

Under Rule 1:4-8(a), sanctions for frivolous filings may also be available. An attorney that signs, files, or advocates a pleading or motion certifies, among other things, that

> (1) the paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]
>
> (2) the claims . . . therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.
>
> [R. 1:4-8(a).]

Before applying for sanctions, the moving party must "serve[] written notice and demand . . . to the attorney . . . who signed or filed the paper objected to." R. 1:4-8(b)(1). The notice must

> (i) state that the paper is believed to violate the provisions of this rule, (ii) set forth the basis for that belief with specificity, (iii) include a demand that the paper be withdrawn, and (iv) give notice, except as otherwise provided herein, that an application for sanctions will be made within a reasonable time thereafter if the offending paper is not withdrawn within [twenty-eight] days of service of the written demand.

[<u>R.</u> 1:4-8(b)(1).]

A party seeking to recover attorney's fees under the frivolous litigation statute must also comply, to the extent practicable, with <u>Rule</u> 1:4-8. <u>Toll Bros., Inc. v. Township of West Windsor</u>, 190 N.J. 61, 69 (2007) (quoting <u>R.</u> 1:4-8(f)).

The court must strictly interpret the frivolous litigation statute and <u>Rule</u> 1:4-8 against the applicant seeking attorney's fees and/or sanctions. <u>See</u> <u>LoBiondo v. Schwartz</u>, 199 N.J. 62, 99 (2009) (discussing <u>R.</u> 1:4-8); <u>DeBrango</u>, 328 N.J. Super. at 226 (citing <u>McKeown-Brand</u>, 132 N.J. at 561-62) (discussing N.J.S.A. 2A:15-59.1). A strict interpretation recognizes "the principle that citizens should have ready access to . . . the judiciary." <u>Belfer v. Merling</u>, 322 N.J. Super. 124, 144 (App. Div. 1999) (citing <u>Rosenblum v. Borough of Closter</u>, 285 N.J. Super. 230, 239 (App. Div. 1995)). A judge should only award sanctions for frivolous litigation in exceptional cases. <u>See</u> <u>Iannone v. McHale</u>, 245 N.J. Super. 17, 28 (App. Div. 1990).

To award attorney's fees for frivolous litigation, we have required a showing of bad faith. <u>See</u> <u>Ferolito v. Park Hill Ass'n</u>, 408 N.J. Super. 401, 410-11 (App. Div. 2009) (citing <u>McKeown-Brand</u>, 132 N.J. at 549). The frivolous litigation statute requires a finding that plaintiffs (1) acted in bad faith or (2) lacked a "reasonable" legal or equitable basis for their claims and "a good faith

11

argument for an extension, modification or reversal of existing law."[4]  N.J.S.A. 2A:15-59.1(b).

With respect to defendants' contention that plaintiffs acted in bad faith by filing the complaint and motion for reconsideration, we find that defendants' argument ignores the substance of plaintiffs' claims.  Upon our review of plaintiffs' complaint, we find that the allegations appear to form the basis for an undue influence claim.  See Pascale v. Pascale, 113 N.J. 20, 30 (1988) (citations omitted) ("In respect of an inter vivos gift, a presumption of undue influence arises when the contestant proves that the donee dominated the will of the donor, or when a confidential relationship exists between donor and donee.").  Here, plaintiffs alleged that Wolfson knew that "Simon had a limited ability to read or understand documents," and he "would merely place documents in front of . . . Simon and show her where to sign them, without explaining the nature or purpose of those documents, and that . . . Simon would sign said documents without question or any hesitation."  Further, plaintiffs alleged that many times, Simon "denied knowledge or understanding of many of the transactions

---

[4]  Similarly, Rule 1:4-8(a)(2) requires a finding that plaintiffs' complaint lacked "claims . . . warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

executed on her behalf and on behalf of . . . [BST], by . . . Wolfson." Plaintiffs' complaint does not explicitly allege undue influence, but their allegations suggest it. Namely, plaintiffs explain how Wolfson dominated Simon's will and consequently was able to withdraw funds on her behalf, while she lacked an understanding of the effects of the transactions.

Thus, although plaintiffs were the wrong individuals to pursue this action, we reject defendants' contentions that plaintiffs pursued frivolous litigation because the complaint and motion for reconsideration did not lack a reasonable legal basis. See R. 1:4-8(a)(2); N.J.S.A. 2A:15-59.1(b)(2). Accordingly, we conclude that the judge did not abuse his discretion in denying defendants' motion for attorney's fees and sanctions.

To the extent we have not specifically addressed any remaining arguments raised by defendants, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-5874-17T2